PROVIDED TO MARTIN CORRECTIONAL INSTITUTION ON 04/27/2020 FOR MAILING BY ATL

APR 30 2020
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Palm Beach Division

PROVIDED TO MARTIN CORRECTIONAL INSTITUTION ON 11/5/19 RJ ATL

AVION LAWSON,
    Plaintiff,

v.

P. McGEE;
~~J. HOLTZ; J.WHIPPE;~~
R. BRYNER; ~~CPT. GORMAN;~~
~~MAJOR KING,~~
    Defendants.
_____/

Hon: RODOLFO A. RUIZ
Mag.: LISETTE M. REID

CASE NO.: 9:19-CV-81526-RAR

## 1983 CIVIL RIGHTS COMPLAINT

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. 1331, 1337 and 1343(A)(3).

2. Plaintiff's Federal claims are predicated upon 42 U.S.C. 1983 and 1988.

3. This Court also has jurisdiction of Plaintiff's Federal claims.

4. Declaratory relief is authorized by 28 U.S.C. 2201-2202 and Fed.R.Civ.P. 57 and injunctive relief is authorized by Fed.R.Civ.P. 65.

5. Venue is proper in this Court pursuant to 1391(b) in the Southern District of Florida, Palm Beach Division, because Defendants are found and actions arose here.

1

## II. PARTIES

6. Plaintiff Avion Lawson ("Lawson/Avion") is a prisoner of the Florida Department of Corrections who, at all times material hereto, was in the custody of FDOC.

7. At all times material hereto, Defendant Robert Bryner was a Warden of Martin Correctional Institution, sued individually.

8. At all times material hereto, Defendant John Holtz was an Assistant Warden of Martin Correctional Institution, sued individually.

9. At all times material hereto, Defendant P. McGee was a classification officer of Martin Correctional Institution, sued individually.

10. At all times material hereto, Defendant King was a Major of Martin Correctional Institution, sued individually; At All times material Hereto, Defendant Gorman was a Captain of Martin Correctional Institution, sued Individually.

## III. FACTS

11. On March 4th, 2019, Avion was transferred to Martin Correctional from Walton Correctional Institution. Avion has been the subject of abuse of retaliation by Correctional Officers at Lake Correctional, Walton Correctional, and now Martin Correctional Institution as a means of "premeditated design of murder" to deter Avion from filing lawsuits and grievances against prison staff.

2

12. The Florida Department of Corrections has a policy and custom of keeping frequent "<u>writ-writers</u>" in confinement and limiting the defense of their rights.

13. During his time at the three institutions Defendants expressed animus toward Avion because he grieved non-stop about reprisal and abusive treatment.

14. The savagery with which Avion was beaten was unjustified and unprovoked.

15. There were strong lines of communication between Lake, Walton and Martin to murder Avion.

16. McGee threatened Avion, warning payback for Lake and Walton Officials.

17. Avion was confronted by McGee in her office who said, "my good friends from Lake and Walton sends their regards" and continued on with threats and the interview.

18. Avion complained to Martin Administrators without effect, and promised them he's going to file a lawsuit for such illegal behavior. They all showed no interest nor cared. "<u>Time is pressing</u>" as Avion is in imminent danger of serious physical injury and is a '<u>genuine emergency</u>'.

19. McGee told the other officers that Avion "liked to jack his wee-wee, write grievances and file lawsuits and snitch to the inspectors".

3

20. McGee told Avion, "no matter where you go you will be labeled as a snitch who likes to sue police". The 'threats were real and proximate'.

21. Retaliatory threats and physical violence regularly occur at Martin Correctional A.K.A. "Murder-Martin" at the hands of officers, even inmates.

22. As McGee was talking she stated, "we never walk alone".

23. At the end of the interview McGee told Avion "we've been waiting on you. You like to make it hard on my colleagues huh? Well, I'm going to make sure we take good care of you here at Martin". Showing Malice and 'premeditated design of murder' against Avion.

24. After the interview he was escorted to confinement to finish his D/C time.

26. March 15th, 2019, Avion was released from confinement.

26. On or about March 26th, 2019, Avion was scheduled to visit McGee for a progress review.

27. At the interview McGee advised she's taking his visiting privileges for 1 year since he likes to be a writ-writer and sue people. McGee then stated "I'm going to have your black ass beat and stabbed to death by your fellow inmates. They do whatever I say and I'll see to it that it's taken care of. Have fun and get the fuck out of my office".

4

28. Approximately two and a half weeks later, the entire E-dormitory was escorted to the rec. yard so staff could search the dorm and run the dogs through as a routine search.

29. Avion was soon after chased by two inmates wielding homemade knives (shanks) and stabbed once in the back of the thigh of his right leg and left knee which bled staining his State issued blue prison pants.

30. Running towards staff for help Avion told the two officers he was stabbed and needed medical attention. This request was denied and both officers told him "you're okay, you're not bleeding enough they only look like little gashes. Maybe next time you'll think about disrespecting our staff and filing your grievances then we'll help. Other than that throw some dirt on it and go to the house (dorm). Avion kept his mouth closed because he knew the threats were real and imminent.

31. No medical treatment was given due to inevitable reprisal that would follow suit behind his actions.

32. Martin Correctional has a known widespread history throughout the Florida penal system for inmate-on-inmate killings, abuse and staff-on-inmate assaults and retaliation.

33. McGee followed a 'code of silence' and was deliberately indifferent to health and safety of Avion ordering a 'hit' for him to be assaulted causing severe intentional infliction of emotional distress, pain and suffering.

34. Avion was then forced to patch himself up to prevent infection to his wounds.

35. Avion is under imminent danger of serious physical injury 'at the filing of this complaint'.

36. Every day he is in pain limiting his ability to conduct daily exercise.

37. Avion suffers from an 'extreme level of discomfort' because of enhanced injuries to his back, ribs, shoulder, neck and knee.

38. No investigation was ever taken.

39. A known "writ-writer" is widely despised and becomes a "target-inmate".

40. Plaintiff continuously feels sharp pains, soreness, and severe muscle spasms due to the continued abusive behavior by Martin officials.

41. Months later due to Avion filing suit against Martin officials as of September 23rd, 2019, threats of harm has resurfaced against him from Defendants named herein and John and Jane Doe Officials.

42. Defendants owed him a duty of reasonable care.

43. The breach of duty resulted in serious injury and emotional distress.

6

44. The breach of duty proximately caused those damages.

45. Martin is very poorly understaffed with inexperienced correctional officers.

46. Excessive gate barriers over the entire compound which segregates everyone and traps an inmate cornering him off in instances of extreme danger with no staff in sight or close by to aid in case of such emergency.

47. The prison was routinely understaffed.

48. Locks on cell doors were not functional, allowing inmates to roam freely at all hour of the day.

49. Homemade weapons were readily available by fashioning weapons from material torn from the dilapidated structure of the prison.

50. Staff did no rounds during the day and only did rounds when it was count time 3 to 5 hours apart.

51. Cells were not visually inspected regularly.

52. The prison was not operated in accordance with written policies.

53. Gates are outdated and dangerous.

54. Inmates have died because of the gates and had nowhere to run to staff for help.

55. The prison has one officer sometimes only two on the recreation yard with 200 to 300 inmates where a lot of stabbings occur resulting in poor supervision allowing inmates to get away with stabbings.

56. Because of inadequate training prison officials don't have a clue on how to respond to such an emergency, and significant time lapses due to the excessive fencing at the prison hindering staff from responding to an incident or saving an inmates' life.

57. Threats were made on different occasions that he has an option to drop the grievances warning him that if he pursued the grievance process any more it won't be pretty indicating harm will be initiated causing Avion to adhere to their threats.

58. The protected conduct was the motivating factor behind the harm occurred at Lake, Walton and Martin Correctional.

59. There is a causal connection between the retaliatory acts and the adverse effect on the protected conduct.

60. At all times material hereto, Avion was and still is under imminent danger of serious physical injury at the filing of this complaint.

61. Because of Bryner and Holtz failure to adequately train their subordinates resulting in abuse and stabbings as well due to the prison being poorly understaffed.

8

GORMAN, LATHROPE,

62. Bryner, and Holtz stuck by the motto "<u>we never walk alone</u>" and held their cards close to the vest following a code of silence of an unwritten policy and custom allowing their subordinates to wreak havoc on the inmate population.

63. Writ-writers make up a large number of inmates in confinement and frequently have problems getting medical and security needs addressed.

64. Avion has also been humiliated by security in front of other inmates.

65. A target inmate may also be exploited by inmate staff.

66. Humiliation in front of peers has the additional effect of marking an inmate as an easy target for inmate predators who know he won't be protected.

67. As a result of his untreated stab wounds, which continued to bleed, and pronounced swelling to his knee and thigh, Plaintiff suffered aching, panic attacks, sleep deprivation, uncontrollable shaking, nightmares, headaches, and extreme physical pain also to his exacerbated injuries.

68. Avion would wake with dried blood caking his pants, boxers and sheets on his bed.

69. On one occasion Avion stopped and asked both Bryner and Holtz that their staff keeps threatening him and could he be transferred to a less violent institution like South Bay Facility or Dade Correctional.

✱ — 70. GORMAN, WHIPPLE, Bryner, and Holtz stated "the legendary Mr. Lawson wants a transfer? Hell, son, this only the beginning you haven't seen nothing yet" and walked off showing malice and evil intent.

✱ — 71. Other inmates who have McGee as their classification officer told Avion that she asked did they know an inmate by the name of Lawson and that she planned to teach him (Avion) a lesson and that she can have him touched anytime she wants.

✱ — 72. Because of McGee's criminal negligence and 'premeditated murder by design' intentions Avion is in danger of inevitable reprisal.

73. Avion suffers from multiple disabilities, including depression, loss of vision, schizophrenia, bi-polar disorder, and paranoia.

74. Sufficient medical and mental health care has been denied at all three institutions, as officials interfered with treatment.

75. As a direct and proximate result of the wrongful acts alleged herein throughout, Plaintiff suffered bodily injury, pain and suffering, disability, aggravation of an existing condition, humiliation, and mental anguish. These injuries are continuing, and Plaintiff will suffer such losses in the future.

76. Expressing his concerns to CAPTAIN GORMAN AND SGT. WHIPPLE, Major King about the corporal punishment instituted against Plaintiff and the inmate population he (King) showed no concern whatsoever and stated "I'm running the show, and I'll run it how I see fit. If you

have a problem with how I run my prison 'oh well'. I can't stop the stabbings, nor am I trying to". Showing deliberate indifference to the safety of the inmate populations well-being.

77. [CAPTAIN GORMAN And WHIPPLE] Because of Major King's inadequate tactics of segregation amongst the inmate population causes tension and bloodshed throughout the compound. Avion has been the victim of his inadequate theories and practices at Martin Correctional following an unwritten policy and custom.

78. [WHIPPLE, GORMAN] King, Bryner, and Holtz, as policy makers are responsible for specific acts relating to inmate care and custody knew inmates like Lawson faced a substantial risk of serious harm and policies and practices adopted were deliberately indifferent to the safety of vulnerable inmates like Lawson.

79. [WHIPPLE, GORMAN] Defendants King, Bryner, and Holtz as supervisors directed their subordinates McGee and others to act unlawfully and failed to stop them from doing so.

80. [WHIPPLE, GORMAN] King, Bryner, and Holtz have the authority to take measures to attempt to reduce instances of prisoner mistreatment, including increasing training of officials and rotating officers and providing more staff to supervise better over the inmate population.

81. [WHIPPLE, GORMAN] Bryner, King, and Holtz knew that the actions they undertook would be insufficient to provide inmates and Avion with reasonable protection from violence

11

at the hands of officials and violent inmates and had other means available to them which they nevertheless disregarded.

82. Defendants all were in a position to take steps that could have averted retaliation and excessive force by subordinates but through callous indifference failed to do so.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests of the Court:

A. Compensatory damages in the amount of $100,000 against Defendants GORMAN, WHIPPLE, McGee, Bryner, Holtz and King, individually;

B. Punitive damages in the amount of $100,000 against Defendants McGee, GORMAN, WHIPPLE, Bryner, Holtz and King, jointly;

C. Reasonable attorney's fees and cost as provided by law;

D. Demand trial by jury for those claims so triable;

E. Nominal damages where compensatory damages are limited by law; and

F. Such other relief as the court deems just and proper.

Respectfully submitted,

*Avion Lawson*

Avion Lawson, DC# W38414

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was placed into a prison official's hands for mailing via U.S. First Class Mail to: United States District Court; 701 Clematis Street, Room 202; West Palm Beach, Florida 33401 on this 4TH day of NOVEMBER.

*/s/ Avion Lawson*

Avion Lawson, DC# W38414
Martin Correctional Institution
1150 S.W. Allapattah Road
Indiantown, FL 34956



$000.80
PITNEY BOWES
APR 27 2020
MAILED FROM ZIP CODE 34956

United States District Court
400 North Miami Avenue
Room 8N09
Miami, Florida 33128

Don Lawson DC#nT38414
Martin Correctional Institution
1150 SW Allapattah Road
Indiantown, Florida 34956

PROVIDED TO
MARTIN CORRECTIONAL INSTITUTION
ON 04/27/2020
FOR MAILING WHS ATL

LEGAL MAIL

RECEIVED
APR 30 2020
12:07 PM

USMS INSPECTED