UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-81526-CV-RUIZ
MAGISTRATE JUDGE REID

AVION LAWSON,

       Plaintiff,

v.

P. MCGEE, et al.,

       Defendants

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Plaintiff, **Avion Lawson**, while confined at Martin Correctional Institution, filed this *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983. *See* [ECF No. 19]. Liberally construing the Amended Complaint, Plaintiff claims deliberate indifference to his safety and serious medical needs in violation of the Eighth Amendment and retaliation under the First Amendment of the United States Constitution. *See* [*Id*.]. Plaintiff sues Warden Robert Bryner ("Warden Bryner") and classification officer P. McGee ("Officer McGee") in their individual capacities. [*Id*. at 2].

This case has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Fla. Administrative Order 2019-2. [ECF No. 2]. Because Plaintiff was a prisoner at the time of filing his Amended Complaint and proceeding *in forma pauperis* [ECF No. 8 at 4], his Amended Complaint must be screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007).

Accordingly, upon thorough review, the Undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF No. 19] **PROCEED** against (1) Officer McGee for deliberate indifference to a serious risk of harm and medical needs in violation of the Eighth Amendment and for retaliation in violation of the First Amendment; and (2) Warden Bryner for deliberate indifference to a risk of serious harm in violation of the Eighth Amendment and retaliation in violation of the First Amendment under a theory of supervisory liability.

It is further recommended, for the reasons set forth in this Report, that this case, Case No. 19-81526-CV-RUIZ, be joined and consolidated with civil Case No. 19-14356-CV-ROSENBERG.

## II. Plaintiff's Factual Allegations

On March 4, 2019, Plaintiff was transferred from Walton Correctional Institution ("Walton C.I.") to Martin Correctional Institution ("Martin C.I."). [ECF No. 19 ¶ 11]. Plaintiff claims that he has been the subject of "abuse of retaliation" by correctional officers at Lake Correctional Institution ("Lake C.I."), Walton C.I., and Martin C.I. "as a means of 'premeditated design of murder" to deter him from filing lawsuits and grievances against prison staff." [*Id*.]. He contends that the Florida Department of Corrections ("FDOC") "has a policy and custom of keeping frequent 'writ-writers' in confinement and limiting the defense of their rights." [*Id*. ¶ 12]. He further alleges that there "were strong lines of communication" between the three institutions, and that during his time at all three, "Defendants expressed animus toward [him] because he grieved non-stop about reprisal and abusive treatment." [*Id*. ¶¶ 13, 14].

Specifically, as to the alleged events at Martin C.I., Plaintiff was first confronted in Officer McGee's office for an interview, where she threatened Plaintiff for filing prior grievances and/or complaints. *See* [*id*. ¶ 17, 19, 20, 23]. After the interview, Plaintiff was escorted to confinement to finish his "D/C time." [*Id*. ¶ 24]. On March 15, 2019, he was released from confinement. [*Id*. ¶ 26].

On March 26, 2019, Plaintiff met with Officer McGee for a progress interview. [*Id*.]. Officer McGee, once again, threatened Plaintiff for filing prior grievances and/or complaints. *See* [*id.* ¶ 27].

Approximately two and a half weeks later, the entire "E-dormitory" was escorted to the recreation yard so staff could search the dorm and run dogs through as a routine search. [*Id.* ¶ 28]. Soon after, Plaintiff was chased by two inmates wielding homemade knives. [*Id.* ¶ 29]. They stabbed Plaintiff once in the back of his right thigh and in his left knee, which caused his prison pants to be stained with blood. [*Id.*].

Plaintiff ran towards the staff for help and told two officers that he was stabbed and needed medical attention. [*Id.* ¶ 30]. His request for medical attention was denied. [*Id*]. Both officers looked at Plaintiff and stated, "you're okay, you're not bleeding enough[,] they only look like little gashes. Maybe next time you'll think about disrespecting our staff and filing your grievances[,] then we'll help. Other than that[,] throw some dirt on it and go to the house (dorm)." [*Id*]

Plaintiff alleges that he "kept his mouth closed because he knew the threats were real and imminent." [*Id*.]. He also alleges that no medical treatment was given due to "inevitable reprisal that would follow suit behind his actions." [*Id*.]. He was "forced to patch himself up to prevent infection to his wounds." [*Id.* ¶ 34].

4

Months later, due to filing a previous complaint against Martin officials on September 23, 2019, in what can reasonably ascertained as Case No. 19-14356-CV-ROSENBERG,[1] "threats of harm have resurfaced against him from Defendants named here[,] and John and Jane Doe officials." [*Id.* ¶ 41].

He also alleges that "[t]hreats were made on different occasions that he has an option to drop the grievances[,] warning him that if he pursued the grievance process any more [sic], it won't be pretty[,] indicating harm will be initiated causing [Plaintiff] to adhere to their threats." [*Id.* ¶ 57]. He claims that "[t]he protected conduct was the motivating factor behind the harm [which] occurred at Lake, Walton[,] and Martin Correctional" [*Id.* ¶ 58], and "[t]here is a causal connection between the retaliatory acts and the adverse effect on the protected conduct." [*Id.* ¶ 59]. He alleges that he "is under imminent danger of serious physical injury" by filing this Amended Complaint. [*Id.* ¶ 35].

Plaintiff complained to "Martin Administrators without effect and promised them he's going to file a lawsuit for such illegal behavior." [*Id.* ¶ 18]. He claimed that they "showed no interest or cared and that "[t]ime is pressing" as he is in imminent danger of serious physical injury . . . ." [*Id.* ¶ 18].

---

1 *See* Complaint, *Lawson v. V. Maldonado, et al.*, No. 19-14356-CV-ROSENBERG (S.D. Fla. Sept. 19, 2019) [CV1-ECF No. 1].

Plaintiff contends Warden Bryner, along with other supervisors, "as policy makers are responsible for specific acts relating to inmate care and custody[,] and knew inmates like [Plaintiff] faced a substantial risk of serious harm[,] and policies and practices adopted were deliberately indifferent to the safety of vulnerable inmates like [Plaintiff]." [*Id.* ¶ 78]. He contends that Warden Bryner and these individuals, as supervisors, "directed their subordinates and others to act unlawfully and failed to stop them from doing so." [*Id.* ¶ 79]. He alleges that Warden Bryner and these individuals "have the authority to take measures to attempt to reduce instances of prisoner mistreatment" and "that the actions they undertook would be insufficient to provide inmates and [Plaintiff] with reasonable protection from violence at the hands of officials and violent inmates . . . ." [*Id.* ¶¶ 80-81].

As a whole, Plaintiff asserts that Martin C.I. "has a known widespread history throughout the Florida penal system for inmate-on-inmate killings, abuse[,] and staff-on-inmate assaults and retaliation." [*Id.* ¶ 32]. He also lists a number of safety concerns, which he contends are pervasive throughout Martin C.I. [*Id.* ¶¶ 45-54].

As for injuries, Plaintiff alleges that "[a]s a result of his untreated stab wounds, which continued to bleed, and pronounced swelling to his knee and thigh[,] he suffered aching, panic attacks, sleep deprivation, uncontrollable shaking, nightmares, headaches, and extreme physical pain . . . ." [*Id.* ¶ 67].

6

Plaintiff also alleges that he suffers daily pain and an "extreme level of discomfort' because of enhanced injuries to his back, ribs, shoulder, neck[,] and knee." [*Id*. ¶¶ 36-37]. He "continuously feels sharp pains, soreness, and severe muscle spasms due to the continued abusive behavior by Martin officials." [*Id*. ¶ 40]. He also suffers from "multiple disabilities, including depression, loss of vision, schizophrenia, bipolar disorder, and paranoia." [*Id*. ¶ 73]. He alleges that sufficient medical and mental health care has been denied at Martin C.I., Walton C.I., and Lake C.I. [*Id*. 74].

Plaintiff's factual allegations will be explained in further detail in the discussion section of this Report.

Lastly, as for relief sought, Plaintiff requests compensatory and punitive damages against Warden Bryner and Officer McGee. [*Id*. at 10].

### III. Standard of Review

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). Under both 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A, a complaint must be dismissed if the court determines that the complaint fails to state a claim upon which relief can be granted. *See Wright v. Miranda*, 740 F. App'x 692,

694 (11th Cir. 2018). When reviewing the complaint, the court takes the allegations made as true. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

The same standard is used for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and § 1915(e)(2)(B)(ii). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, the court may dismiss a complaint that fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017)) (per curiam). Although a *pro se* pleading is liberally construed, it still must "suggest that there is some factual support for a claim." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Finally, under section 1915(e)(2)(B)(ii), courts must dismiss as frivolous claims that are "based on an indisputably meritless legal theory . . ." or "whose

factual contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

## IV. Discussion

As discussed below, in the following order, construing Plaintiff's Amended Complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), he brings claims against:

1) Officer McGee for deliberate indifference to a risk of serious harm/failure to protect in violation of the Eighth Amendment;

2) Warden Bryner for deliberate indifference to a risk of serious harm/failure to protect in violation of the Eighth Amendment under a theory of supervisory liability;

3) Officer McGee for retaliation under the First Amendment and Warden Bryner for retaliation under the First Amendment under a theory of supervisory liability;

4) Warden Bryner for failure to train; and,

5) Officer McGee and Warden Bryner for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

*See* [ECF No. 19].

1) <u>Deliberate Indifference: Failure to Protect</u>

To state an Eighth Amendment failure to protect claim, "a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Caldwell v.*

*Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citation omitted). "When examining the first element--a substantial risk of serious harm--the court uses an objective standard." *Id.* (citation omitted).

"The second element--the defendant's deliberate indifference to that risk--has two components: one subjective and one objective." *Id.* To satisfy the subjective component, a plaintiff must produce evidence that the defendant "actually subjectively knew that an inmate faced a substantial risk of serious harm." *Id.* (alterations omitted) (citation omitted). To satisfy the objective component, a plaintiff must produce evidence that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner. *See id.*

"With regard to the subjective component of the second element--i.e., the defendant's actual knowledge that an inmate faced a substantial risk of serious harm--the defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1099-1100 (citation omitted).

A) *Officer McGee*

As to the first element of Plaintiff's deliberate indifference claim, he provides sufficient facts to support a plausible inference that he faced a substantial risk of serious harm. *See Moulds v. Bullard,* 345 F. App'x. 387, 391 (11th Cir. 2009) ("[a]

10

substantial risk to a prisoner's safety may arise ... out of his individual situation....").
Here, Plaintiff was stabbed by two inmates, and when he asked officers for help they
ignored him and failed to provide him with any medical attention. [ECF No. 19 ¶¶
30, 34].

As for the second element, Plaintiff has shown that Officer McGee was
deliberately indifferent to a serious risk of harm. Officer McGee threatened Plaintiff
on multiple occasions. During Plaintiff's initial interview with Officer McGee she
told Plaintiff (1) "my good friends from Lake and Walton send[] their regards" [ECF
No. 1 ¶ 17]; (2) "no matter where you go[,] you will be labeled as a snitch who likes
to sue police" [*Id*. ¶ 20]; and (3) "We've been waiting on you. You like to make it
hard on my colleagues huh? Well, I'm going to make sure we take good care of you
here at Martin." [*Id*. ¶ 23]. Officer McGee also told other officers that Plaintiff "liked
to jack his wee-wee, write grievances[,] . . . file lawsuits[,] and snitch to the
inspectors." [*Id*. ¶ 19].

On March 26, 2019, at a second interview with Plaintiff, Officer McGee
stated, "I'm going to have your black ass beat and stabbed to death by your fellow
inmates. They do whatever I say[,] and I'll see to it that it's taken care of. Have fun
and get the fuck out of my office." [*Id*. ¶ 27]. Plaintiff also asserts that other inmates
who have Officer McGee as their classification officer, have told Plaintiff that

Officer McGee had informed them that she planned to teach Plaintiff a lesson and that "she can have him touched anytime she wants." [*Id.* ¶ 71].

A few weeks after threats were made by Officer McGee, Plaintiff was seriously harmed when he was stabbed in his right thigh and left knee by two inmates wielding homemade knives. [*Id.* ¶ 29].

Here, Plaintiff's allegations show that not only was Officer McGee "actually subjectively aware" of a substantial risk of serious harm, but a plausible inference can be drawn that Officer McGee played a role in orchestrating the assault against Plaintiff. *See Caldwell,* 748 F.3d at 1099; s*ee also Sepulveda v. Burnside*, 170 F. App'x 119, 123 (11th Cir. 2006) (finding a jury could sustain a conclusion of deliberate indifference where a reasonable jury might further infer from defendant's conduct that defendant encouraged or deliberately orchestrated an assault, based on plaintiff's testimony about the close relationship between defendant and other inmate, and their exchange of racist and derogatory remarks about plaintiff).

Accordingly, based on Plaintiff's allegations, an inference can be drawn that Officer McGee knew that a substantial risk of harm to Plaintiff existed. *See Caldwell,* 748 F.3d at 1099-1100. Furthermore, Plaintiff's allegations show that Officer McGee disregarded the known risk that Plaintiff could be assaulted by other inmates and failed to respond to the risk in an objectively reasonable manner. *See id.* at 1099.

12

Lastly, Plaintiff has provided sufficient facts to meet the causation element because a plausible inference can be drawn that Officer McGee's purported threats were directly related to the incident where Plaintiff was stabbed and consequently denied medical treatment.

Thus, at this juncture, Plaintiff has provided sufficient facts to support a facially plausible deliberate indifference to a risk of serious harm claim against the Officer McGee.

2) <u>Deliberate Indifference/Failure to Protect under a Theory of Supervisory Liability</u>

*A) Warden Bryner*

It appears to the Court that Plaintiff means to suggest that Warden Bryner is liable for failure to protect under a theory of supervisory liability.

"In addressing a claim of failure to protect against a supervisor, and more particularly in this instance, against a warden of a prison facility, the Court should inquire as to whether the individual had the ability to prevent or stop a constitutional violation and failed to exercise his authority as a supervisor to prevent or stop the constitutional violation." *Logan v. Johnson*, No. 3:13-CV-532-J-39MCR, 2014 WL 5473561, at *8 (M.D. Fla. Oct. 28, 2014); *see also Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010) (finding a supervisor may be liable under a theory of supervisory liability if he has the ability to prevent or discontinue a known

constitutional violation and then fails to exercise his authority to stop the constitutional violation).

Warden Bryner may not, however, be held liable under a theory of *respondeat superior*. "Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability." *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1396 (11th Cir. 1994). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Doe v. Sch. Bd. of Broward Cty, Fla.,* 604 F.3d 1248, 1266 (11th Cir. 2010) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.,* 133 F.3d 797, 802 (11th Cir. 2006)).

Supervisory liability occurs either when (1) the supervisory official personally participates in the alleged unconstitutional conduct; or (2) when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

The causal connection can be established four different ways. *See Cottone*, 326 F.3d at 1360. First, "[a] causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so[.]'" *Gonzalez v. Reno*, 325 F.3d 1228, 1234

14

(11th Cir. 2003) (quoting *Braddy*, 133 F.3d at 802). Second, a causal connection exists "when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights[.]'" *Gonzalez*, 325 F.3d at 1234 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)). Third, "[a] causal connection can be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully[.]" *Id.* Finally, when there are facts supporting an inference that the supervisor "knew…subordinates would act unlawfully and failed to stop them from doing so," a causal connection can be established. *Id.*

Here, Plaintiff does not allege that Warden Bryner personally participated in the assault against Plaintiff, nor does Plaintiff explicitly contend that Warden Bryner directed the assault against Plaintiff.

Instead, Plaintiff does, however, allege that Warden Bryner knew his subordinates would act unlawfully and failed to stop them from doing so and maintained a policy of deliberate indifference to Plaintiff's constitutional rights. *See* [ECF No. 19 ¶¶ 78-81]; *see also Jenkins*, 2017 WL 3381713, at *5-7 (finding plausible supervisory liability "claim predicated on either a failure to take reasonable steps in the face of a persistent and widespread practice of abuse, or by showing of the adoption of customs or policies deliberately indifferent to the health and safety of vulnerable inmates"); *Scott v. Brown*, No. 1:11-CV-1811-TWT-JFK, 2012 WL

15

529983, at *5 (N.D. Ga. Jan. 26, 2012), *report and recommendation adopted*, No. 1:11-CV- 1811-TWT, 2012 WL 527476 (N.D. Ga. Feb. 16, 2012) (finding the facts alleged by plaintiff were sufficient, on preliminary review, to state a claim that defendants were responsible for a policy that condoned the alleged use of excessive force).

First, in support, Plaintiff has alleged the following: (1) Warden Bryner and other employees of the FDOC stated, "the legendary Mr. Lawson wants a transfer? Hell, son, this is only the beginning[,] you haven't seen nothing yet" [ECF No. 19 ¶ 70]; (2) Warden Bryner and other supervisors of Martin C.I., "stuck by the motto[,] 'we never walk alone[,]' and held their cards close to the vest[,] following a code of silence of an unwritten policy and custom[,] allowing their subordinates to wreak havoc on the inmate population" [*Id*. ¶ 62]; (3) that the Florida Department of Corrections ("FDOC") "has a policy and custom of keeping frequent 'writ-writers' in confinement and limiting the defense of their rights" [*Id*. ¶ 12]; and (4) "[o]n on occasion, [Plaintiff] stopped and asked both [Warden Bryner and the assistant warden] that their staff keeps threating him [sic] and could he be transferred to a less violent institution like South Bay Facility or Dade Correctional." [*Id*. ¶ 69].

Second, Plaintiff provides numerous statements by Officer McGee, an officer under Warden Bryner's supervision, which show that Officer McGee was

16

deliberately indifferent to a serious risk of harm. Specifically, Officer McGee's statements consisted of explicit threats of harm toward Plaintiff for filing prior grievances and complaints. *See* [ECF No. 19 ¶¶ 17, 19-20, 23, 27]. These threats came to fruition weeks later when Plaintiff was assaulted by other inmates.

Third, Plaintiff also contends that he expressed his concerns to other employees of the FDOC with regard to the "corporal punishment" instituted against him, and one officer stated, "I'm running the show, and I'll run how I see fit. If you have a problem with how I run my prison[,] 'oh well.' I can't stop the stabbings, nor am I trying to." [ECF No. 19 ¶ 76].

Fourth, Plaintiff asserts that, "Writ-writers make up a large number of inmates in confinement and frequently have problems getting medical and security needs addressed." [*Id*. ¶ 63]. "A target inmate may also be exploited by inmate staff." He alleges that "[t]hreats were made on different occasions that he has an option to drop the grievances warning him that if he pursued the grievance process any more [sic], it won't be pretty[,] indicating harm will be initiated causing [Plaintiff] to adhere to their threats." [*Id*. ¶ 57]. He asserts that "retaliatory threats and physical violence regularly occur" at Martin C.I. [*Id*. ¶ 21]. As a whole, Plaintiff asserts that Martin C.I. "has a known widespread history throughout the Florida penal system for

inmate-on-inmate killings, abuse[,] and staff-on-inmate assaults and retaliation." [*Id.* ¶ 32].

Lastly, Plaintiff contends that Warden Bryner, along with other supervisors, "as policy makers are responsible for specific acts relating to inmate care and custody[,] and knew inmates like [Plaintiff] faced a substantial risk of serious harm[,] and policies and practices adopted were deliberately indifferent to the safety of vulnerable inmates like [Plaintiff]." [ECF No. 19 ¶ 78]. He contends that Warden Bryner and these individuals, as supervisors, "directed their subordinates and others to act unlawfully and failed to stop them from doing so." [*Id.* ¶ 79]. He alleges that Warden Bryner and these individuals "have the authority to take measures to attempt to reduce instances of prisoner mistreatment" and "that the actions they undertook would be insufficient to provide inmates and [Plaintiff] with reasonable protection from violence at the hands of officials and violent inmates . . . ." [*Id.* ¶¶ 80-81].

Taking Plaintiff's allegations as true, a plausible inference can be drawn that Warden Bryner was aware of and maintained a culture of retaliatory abuse against Plaintiff by correctional officers under his supervision, knew those officers would act unlawfully, and failed to stop them from doing so. *See Caldwell,* 748 F.3d at 1099 ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that

the official acted or failed to act despite his knowledge of a substantial risk of serious harm."

Therefore, at this juncture, Plaintiff has provided sufficient facts to support a facially plausible deliberate indifference to a risk of serious harm claim under a theory of supervisory liability against Warden Bryner in violation of the Eighth Amendment. *See Mathews v. Crosby,* 480 F.3d 1265, 1271 (11th Cir. 2007).

3) <u>First Amendment: Retaliation</u>

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) [his] speech was constitutionally protected; (2) [he] suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (citation omitted).

"The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech,' particularly the right to petition the government for redress of grievances by filing complaints or lawsuits regarding prison conditions." *Sepulveda v. Burnside*, 170 F. App'x 119, 123 (11th Cir. 2006) (quoting *Thomas v. Evans,* 880 F.2d 1235, 1242 (11th Cir. 1989)). "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his

19

having filed a grievance concerning the conditions of his imprisonment.'" *Id.* (quoting *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 1989).

"A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of his First Amendment rights." *Pittman v. Tucker*, 213 F. App'x 867, 870 (11th Cir. 2007) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)) (alteration omitted). Furthermore, well established law has made clear that "a plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights." *Id.*

Here, Officer McGee stated to Plaintiff (1) "[N]o matter where you go[,] you will be labeled as a snitch who likes to sue police" [ECF No. 19 ¶ 20]; (2) "[W]e've been waiting on you. You like to make it hard on my colleagues huh? Well, I'm going to make sure we take good care of you here at Martin" [*Id.* ¶ 23]; (3) that she was going to take "his visiting privileges for [one] year since [Plaintiff] likes to be a writ-writer and sue people" [*Id.* ¶ 27]; and (4) "I'm going to have your black ass beat and stabbed to death by your fellow inmates. Officer McGee also told other officers that Plaintiff "liked to jack his wee-wee, write grievances and file lawsuits and snitch

to the inspectors." [*Id*. ¶ 19]. Two and a half weeks later, Plaintiff was stabbed by other inmates and sustained severe injuries. [*Id*. ¶¶ 28-29].

Plaintiff's allegations, as outlined above, demonstrate that he suffered adverse conduct from filing grievances. Officer McGee's statements might be read to indicate that Officer McGee intended to teach Plaintiff a lesson and to punish him for filing prior grievances. *See Sepulveda*, 170 F. App'x 123 (finding that officer's statements might be read that officer intended to teach plaintiff a lesson and to punish him for filing a lawsuit when plaintiff filed grievances and officer made statements prior to plaintiff being assaulted by another inmate). Furthermore, Plaintiff alleges that after the assault, he "kept his mouth closed because he knew the threats were real and imminent." [ECF No. 19 ¶ 30]. He alleges that no medical treatment was given due to "inevitable reprisal that would follow suit behind his actions." [*Id*.].

Further, Plaintiff asserts that months later, after the stabbing assault, due to filing a previous complaint against Martin officials on September 23, 2019, "threats of harm have resurfaced against him from Defendants named [here] and John and Jane Doe officials." [ECF No. 19 ¶ 41]. Plaintiff also generally contends that "retaliatory threats and physical violence regularly occur" at Martin C.I. [*Id*. ¶ 21]. Lastly, he alleges that he "is under imminent danger of serious physical injury by filing this complaint." [*Id*. ¶ 35].

21

He also alleges that "[t]hreats were made on different occasions that he has an option to drop the grievances warning him that if he pursued the grievance process any more [sic], it won't be pretty[,] indicating harm will be initiated causing [Plaintiff] to adhere to their threats." [*Id.* ¶ 57].

Based on Plaintiff's allegations above, his filing of prior grievances and numerous complaints appears to be the catalyst for the assault against him. *See Logan*, 2014 WL 5473561, at *8–9 (finding plausible failure to protect claim where plaintiff alleged that that defendant knew his officers would act unlawfully and failed to stop them from doing so as evidenced by allegations that defendant was aware of the danger to plaintiff's health and safety because plaintiff had repeatedly raised the issue that officers were retaliating against him by submitting complaints through the administrative grievance process and by prosecuting a civil rights action).

Accordingly, a plausible inference can be drawn that Officer McGee orchestrated the assault against Plaintiff and Warden Bryner knew his subordinates would act unlawfully by retaliating against Plaintiff for filing prior grievances and complaints and failed to stop them from doing so. *See Gonzalez*, 325 F.3d at 1234; *see also Smith v. Fla. Dep't of Corr.*, 318 F. App'x 726, 728–29 (11th Cir. 2008) (vacating and remanding where facts were sufficient to state a claim against secretary for supervisory liability as plaintiff alleged that he filed an increasing

number of grievances and complaints and was transferred in retaliation for such First Amendment activity).

Although "verbal abuse alone is insufficient to state a constitutional claim," *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008), here, Defendants' statements were likely to have a deterrent effect because, at the direction of Officer McGee, Plaintiff was previously assaulted by two other inmates for filing prior grievances, and Warden Bryner "held a position of significant authority . . . ." *Pittman*, 213 F. App'x at 871 (vacating of summary judgment in favor of defendants because a reasonable jury could interpret statements made by defendants "to be threats of physical violence that could deter a person of ordinary firmness from filing grievances").

Accordingly, Plaintiff has pleaded a plausible first amendment retaliation claim against Officer McGee and a plausible first amendment retaliation claim against Warden Bryner under a theory of supervisory liability.

4) Failure to Train

A) *Warden Bryner*

Plaintiff asserts that because of Warden Bryner's and the assistant warden's "failure to adequately train their subordinates, [this failure to train results] in abuse and stabbings [sic][,] as well as due to the prison being poorly understaffed." [ECF

No. 19 ¶ 61].

Plaintiff alleging that Warden Bryner failed to adequately train or supervise correctional officers—implicates a different, albeit very similar, rule: "under § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)) (alteration in original). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, ... such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, ... and when the failure to train is likely to result in the violation of a constitutional right." *McDaniel v. Yearwood*, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *16 (N.D. Ga. Feb. 16, 2012) (quoting *Belcher v. City of Foley,* 30 F.3d 1390, 1397–98 (11th Cir.1994)).

"Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor

chose to retain that training program." *Keith,* 749 F.3d at 1052 (quoting *Connick v. Thompson,* 563 U.S. 51, 61 (2011)).

Plaintiff lists a number of safety concerns, which he contends are pervasive throughout Martin C.I., and appear to directly relate to his failure to train claim. *See* [ECF No. 1 ¶¶ 45-54]. He claims that Martin C.I. is poorly understaffed, locks on cell doors are not functional, homemade weapons are readily available, cells are not visually inspected, gates are outdated and dangerous, and that "[i]nmates have died because of the gates." [*Id.* ¶¶ 45, 47-49, 51, 53-54]. Additionally, he asserts that the "prison has one officer[,] sometimes only two on the recreation yard with 200 to 300 inmates[,] where a lot of stabbings occur[,] resulting in poor supervision[,] allowing inmates to get away with stabbings." [*Id.* ¶ 55]. He also claims that "[b]ecause of inadequate training prison officials don't have a clue on how to respond to such an emergency, and significant time lapses[,] due to the excessive fencing at the prison[,] hindering staff from responding to an incident or saving inmates' life [sic]." [*Id.* ¶ 56].

While the Court is not unsympathetic and is concerned about the above allegations, the Court cannot find that Plaintiff's allegations fall within the purview of a failure to train claim. As to Plaintiff's allegations with respect to above

conditions listed at Martin C.I., Plaintiff has not alleged that these specific conditions violated his constitutional rights.

Instead, Plaintiff's constitutional violations directly stem from an overt culture of abuse and retaliation at Martin C.I., and not from understaffing, lack of supervision, outdated and dangerous gates, and failure as to how to respond to an emergency situation.

Therefore, as noted throughout this Report, Plaintiff's allegations against Warden Bryner fall within the purview of an Eighth Amendment deliberate indifference claim and a First Amendment retaliation claim under a theory of supervisory liability.

5) <u>Deliberate Indifference to Serious Medical Needs</u>

A) *Officer McGee & Warden Bryner*

To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate: (1) a serious medical need; (2) a showing that the prison official acted with deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.'" *Mann*, 588 F.3d at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (1994)), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To establish the second element, that a prison official acted with deliberate indifference to a serious medical need, a plaintiff must show three facts as follows: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2016) (citing *McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Lastly, for a plaintiff to prevail on a deliberate indifference claim, a plaintiff must demonstrate a causal connection between defendant's alleged deliberate indifference and plaintiff's injury. *See Harris v. Prison Health Servs.*, 706 F. App'x 945, 953 (11th Cir. 2017).

Plaintiff asserts that he suffers from multiple disabilities, including depression, loss of vision, schizophrenia, bipolar disorder, and paranoia. [ECF No. 19 ¶ 73]. He asserts that sufficient medical and mental health care has been denied in all three previously named institutions, including Martin C.I. [*Id.* ¶ 74].

Here, these allegations are too vague and conclusory to state a deliberate indifference claim based on Plaintiff's medical needs against Officer McGee and Warden Bryner. Accordingly, as to these allegations, Plaintiff fails to show that

Defendants had subjective knowledge of a risk of serious harm as to his medical and mental health care and disregarded that risk.

However, as to the April 2019 assault, Plaintiff asserts that after the assault, he ran towards the staff for help and told two officers that he was stabbed and needed medical attention. [ECF No. 19 ¶ 30]. His request for medical attention was denied. [*Id*]. He asserts that he "kept his mouth closed because he knew the threats were real and imminent." [*Id*.]. He also alleges that no medical treatment was given due to "inevitable reprisal that would follow suit behind his actions." [*Id*.]. Plaintiff contends that he was forced to patch himself up to prevent his wounds from being infected. [*Id*. ¶ 34].

As to Warden Bryner, Plaintiff has failed to show that he was aware that Plaintiff needed medical care as Plaintiff's claims against Warden Bryner are not that he directed Officer McGee to act unlawfully, but that he knew subordinates would act unlawfully and failed to stop them from doing so and maintained a policy of deliberate indifference to a risk of serious harm. Accordingly, Plaintiff has failed to show that Warden Bryner was aware of Plaintiff's injuries immediately after the assault and disregarded them.

Therefore, Plaintiff has failed to plead a plausible deliberate indifference claim as to his medical needs against Warden Bryner.

As to Officer McGee, however, because a plausible inference can be drawn that Officer McGee orchestrated the assault against Plaintiff, a plausible inference can be drawn that Officer McGee would know that Plaintiff would need medical care after he was assaulted. Accordingly, an inference may be drawn that Officer McGee had a subjective knowledge of a risk of serious harm as to Plaintiff's medical needs and disregarded that risk by more than mere negligence.

Therefore, Plaintiff has pled a plausible deliberate indifference claim as to his medical needs against Officer McGee.

### V. Punitive Damages

Here, Plaintiff seek punitive damages against all Defendants. [ECF No. 19 at 10]. Punitive damages may be awarded under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

"While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award, ... its intent standard, at a minimum, required recklessness in its subjective form." *Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999). *Smith* refers to a "subjective consciousness" of a risk of injury or illegality

and a "criminal indifference to civil obligations." *Smith,* 461 U.S. at 45-48 (quoting *Philadelphia, W. & B.R. Co. v. Quigley,* 62 U.S. 202, 214 (1858)).

At this early juncture, since it cannot be determined whether punitive damages should be awarded against Officer McGee and Warden Bryner arising from the facts alleged, the punitive damage claim should proceed against these Defendants.

### VI. Joinder of Claims/Consolidation of Cases

Pursuant to Fed. R. Civ. P. 20(a)(2), "Persons ... may be joined in one action as defendants if . . . (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. *See Heard v. Martin Cty. Sheriff's Office*, No. 13-14364-CIV, 2014 WL 12770093, at *15 (S.D. Fla. Aug. 8, 2014).

"The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). Indeed, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs,* 383 U.S. 715, 724 (1966).

"No hard and fast rules' have been established for determining whether multiple factual situations create the same transaction or arise out of a series of transactions, and a 'case by case' inquiry is generally used." *Heard*, 2014 WL 12770093, at \*13 (quoting *Mosley*, 497 F.2d at 1333). However, "the United States Supreme Court has indicated that 'transaction' connotes a series of incidents bearing a 'logical relationship.'" *Heard*, 2014 WL 12770093, at \*13 (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).

In conjunction, Federal Rule of Civil Procedure 42(a) provides: "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a); *see also Young v. City of Augusta, Ga. Through DeVaney,* 59 F.3d 1160, 1168–69 (11th Cir. 1995) (citations omitted) (noting consolidation would be appropriate where the "[t]he actions were filed approximately one month apart, both were assigned to the same district court judge and they have followed a similar course of development [and] [i]n both actions, the plaintiffs will have to prove that a city custom, practice or policy regarding the medical care of mentally ill inmates caused their damages").

Here, based on the applicable rules of Federal Civil Procedure, if the District Court Judge finds Plaintiff's claims should proceed, and at a juncture in the litigation the District Court Judge finds appropriate, the Undersigned recommends joinder and consolidation of this case, Case No. 19-81526-CV-RUIZ with civil Case No. 19-14356-CV-ROSENBERG. In both civil cases: (1) Warden Bryner is a defendant; and (2) Plaintiff's allegations stem from the same transactions or occurrences, i.e., a culture and custom of abuse at Martin C.I. by correctional officers under the supervision of Warden Bryner. Lastly, consolidation and joinder of both cases would promote judicial economy.[2]

## VII. Recommendations

Accordingly, based on the foregoing, it is **RECOMMENDED** that Plaintiff's Amended Complaint [ECF No. 19] **PROCEED** against (1) Officer McGee for deliberate indifference to a serious risk of harm and medical needs in violation of the Eighth Amendment and for retaliation in violation of the First Amendment; and (2) Warden Bryner for deliberate indifference to a risk of serious harm in violation

---

2  The Undersigned has also recommended joinder/consolidation in the Report entered in Case No. 19-14356-CV-ROSENBERG.

of the Eighth Amendment and retaliation in violation of the First Amendment under a theory of supervisory liability.

It is further recommended, that this case, Case No. 19-81526-CV-RUIZ, be joined and consolidated with civil Case No. 19-14356-CV-ROSENBERG.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de novo* determination by the District Court Judge of anything in the recommendation and will bar an attack on appeal of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

**SIGNED** this 27th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE


cc:   **Avion Lawson**
      W384414
      Martin Correctional Institution
      Inmate Mail/ Parcels
      1150 SW Allapattah Road
      Indiantown, FL 34956
      PRO SE

33