# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT PIERCE DIVISION

## CASE NO. 19-81526-CIV-CANNON/Reid

**AVION LAWSON**,

    Plaintiff,

v.

**P. MCGEE, et al.**,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND DISMISSING COMPLAINT

**THIS CAUSE** comes before the Court on the Motion to Dismiss filed by Defendants Officer P. McGee and Warden R. Bryner ("Defendants") [ECF No. 34], filed on December 7, 2020. Defendants argue that Plaintiff's Complaint [ECF No. 1], filed pursuant to 42 U.S.C. § 1983, should be dismissed because Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), prior to filing the Complaint. The Court has considered the Motion, Plaintiff's affidavit in opposition [ECF No. 36], Defendant's reply [ECF No. 38], and the Plaintiff's surrebutter in opposition to the reply [ECF No. 41]. Upon review of the record, and for the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

### BACKGROUND

The following excerpt, taken from Judge Reid's Report and Recommendation [ECF No. 21], is a summary of Plaintiff's factual allegations regarding the alleged incidents:

> On March 26, 2019, Plaintiff met with Officer McGee for a progress interview [ECF No. 1 ¶ 6]. At the interview, she stated that she was going to take

"[Plaintiff's] visiting privileges for [one] year since he likes to be a writ-writer and sue people" [ECF No.1 ¶ 27]. She also stated, "I'm going to have your black ass beat and stabbed to death by your fellow inmates. They do whatever I say[,] and I'll see to it that it's taken care of. Have fun and get the fuck out of my office." [ECF No.1 ¶ 27].

Approximately two and a half weeks later, the entire "E-dormitory" was escorted to the recreation yard so staff could search the dorm and run dogs through as a routine search [ECF No.1 ¶ 28]. Soon after, Plaintiff was chased by two inmates wielding homemade knives [ECF No. 1 ¶ 29]. They stabbed Plaintiff once in the back of his right thigh and in his left knee, which caused his prison pants to be stained with blood [ECF No. 1 ¶ 29]. Plaintiff ran towards the staff for help and told two officers that he was stabbed and needed medical attention [ECF No. 1 ¶ 30]. His request for medical attention was denied [ECF No. 1 ¶ 30]. Both officers looked at Plaintiff and stated, "you're okay, you're not bleeding enough[,] they only look like little gashes. Maybe next time you'll think about disrespecting our staff and filing your grievances[,] then we'll help. Other than that[,] throw some dirt on it and go to the house (dorm)" [ECF No. 1 ¶ 30].

Plaintiff alleges that he "kept his mouth closed because he knew the threats were real and imminent" [ECF No. 1 ¶ 30]. He also alleges that no medical treatment was given due to "inevitable reprisal that would follow suit behind his actions." [Id.]. Plaintiff contends that he was forced to patch himself up to prevent his wounds from being infected. [ECF No. 1 ¶ 34]. Plaintiff further alleges that Officer McGee followed a "code of silence' and was deliberately indifferent to [the] health and safety of [Plaintiff by] ordering a 'hit' for him to be assaulted[,] causing severe intentional infliction of emotional distress, pain[,] and suffering" [ECF No. 1 ¶ 33].

He further asserts that other inmates who have Officer McGee as their classification officer have told Plaintiff that Officer McGee had informed them that she planned to teach Plaintiff a lesson and that "she can have him touched anytime she wants" [ECF No. 1 ¶ 71]. Plaintiff contends that because of Officer McGee's "criminal negligence and 'premeditated murder by design' intentions[,] [Plaintiff] is in danger of inevitable reprisal" [ECF No. 1 ¶ 72]…

Plaintiff complained to "Martin Administrators without effect and promised them he's going to file a lawsuit for such illegal behavior" [ECF No. 1 ¶ 18]. He claimed that they "showed no interest or cared and that "[t]ime is pressing" as he is in imminent danger of serious physical injury . . . ." [ECF No. 1 ¶ 18].

## DISCUSSION

A. **Applicable Law**

The PLRA requires an inmate to exhaust available administrative remedies before filing a

civil rights action.  *See* 42 U.S.C. § 1997e(a).  The PLRA requires "proper exhaustion," which means compliance with the procedural rules and deadlines of the institution's grievance system so that the institution addresses the issue on the merits.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One exception to the PLRA's administrative exhaustion requirement exists: inmates need not exhaust *unavailable* remedies.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  Administrative remedies are unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1860.

Failure to exhaust administrative remedies is an affirmative defense under the PLRA, and inmates are not required to plead exhaustion in their complaints.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  The Eleventh Circuit generally does not consider exhaustion of administrative remedies to be an adjudication on the merits; therefore, an exhaustion defense "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir. 1988)).

"Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record."  *Id.* at 1376.  (citations and footnote call numbers omitted).  In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit set forth the following two-step process to guide this analysis:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.  This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082 (internal citations omitted).

### B. The Grievance Process

#### 1. Exhaustion under the PLRA

The parties do not dispute the procedures for exhausting administrative remedies. "The grievance procedures promulgated by the Florida Department of Corrections ("FDOC") require an inmate to (1) file an informal grievance to the staff member responsible for the particular area of the problem, Fla. Admin. Code Ann. r. 33-103.005(1)(a); (2) file a formal grievance with the warden's office, *id.* at r. 33-103.006(1); and (3) submit an appeal to the Office of the Secretary of the FDOC, *id.* at r. 33-103.007(1)." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010); *see also Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015). "To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011," and they either must receive a response or wait a certain period of time before proceeding to the next step. *Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017) (per curiam) (citing Fla. Admin. Code Ann. r. 33-103.011(4)).

"Informal grievances must be received by the institution within 20 days of when the incident or action being grieved occurred." *Jenkins v. Sloan*, 826 F. App'x 833, 836 (11th Cir. 2020) (per curiam) (citing Fla. Admin. Code Ann. r. 33-103.011). "For formal grievances, the form must be received by the institution no later than 15 days from either the incident or the date of the response to the informal grievance, depending on what route the formal grievance is

4

following." *Id.* The inmate's appeal to the Office of the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code Ann. r. 33-103.011(c).

2. <u>Disputed Facts</u>

Defendants argue that Plaintiff did not submit any grievances regarding the allegations in this case [ECF No. 34, p. 9]. As support, Defendants submit an affidavit from the FDOC's custodian of records Alan McManus [ECF No. 34-1]; an activity log of Plaintiff's informal grievances from April 17, 2019 to March 9, 2020 [ECF No. 34-2]; an activity log of formal grievances from May 5, 2019 to December 11, 2019 [ECF No. 34-3]; copies of grievances (informal, formal, and appeals) that Plaintiff submitted from April 21, 2019 to May 5, 2020 [ECF Nos. 34-5–34-11]; and an activity log of Plaintiff's appeals from April 22, 2019 to December 26, 2019 [ECF No. 34-4]. McManus attested that he "reviewed the grievance files of Inmate Lawson to determine whether he exhausted the inmate grievance process for the specific issues described in his Amended Complaint" [ECF No. 34-1 at ¶ 20].

The Department of Corrections informal grievance summary for Avion Lawson reflects that he filed 22 informal grievances between April 17, 2019 and March 3, 2020 [ECF No. 34-2]. The formal grievance log indicates that Plaintiff filed five formal grievances between December 11, 2019 and May 1, 2019. The log of appeals or direct grievances shows Plaintiff filed five direct grievances or appeals between May 15, 2019 and January 15, 2020.

McManus further stated that none of the grievances that Plaintiff has filed related to alleged threats by Officer McGee or even mentioned Warden Bryner or the alleged assault in mid-April "or any failure to provide medical care thereto" [ECF No. 34-1 at ¶ 24]. McManus attests that "only one informal grievance even mentions Officer McGee" but that it complains that "Officer

5

McGee gave Inmate Lawson 'false and misleading instruction' on March 27, 2017, as to whether he needed to appear for 'callout' the following day" [ECF No. 34-1 at ¶ 25] (quotations in original). Plaintiff did not appeal the denial of this grievance [ECF No. 34-1 at ¶ 26].

McManus also provided grievances filed by Plaintiff after the alleged incident, establishing that Plaintiff was familiar with the prison grievance process [ECF No. 34-1 at ¶ 35].

In response, Plaintiff argues that he did in fact file grievances related to the allegations in his Complaint, but that Defendants destroyed all grievances he submitted to prevent him from pursuing a civil suit [ECF No. 36, p. 5]. Plaintiff argues that because of Defendants' conduct, they should be estopped from asserting the affirmative defense of lack of exhaustion [ECF No. 36, p. 5].

Plaintiff attaches copies of the following grievances regarding the mid-April incident: an informal grievance dated April 22, 2019 [ECF No. 36, p. 10]; the first page of an appeal filed on May 2, 2019 based on FDOC failing to "timely respond per grievance procedure" to his informal grievance [ECF No. 36, p. 11]; and an appeal to the Secretary of the FDOC filed on May 22, 2019 claiming "prison officials" "yet again failed to timely respond to formal grievance filed May 2" [ECF No. 36, p. 12].

Defendants reply that the FDOC has no record of the grievances attached to Plaintiff's Response [ECF No. 38, p. 2]. Defendants also point out that the submissions do not "bear a stamp indicating they were ever received by the institution" [ECF No. 38, p. 3] and bear a date-stamp in the wrong place [ECF No. 38, p. 3].

**C. Plaintiff has satisfied step one of *Turner*.**

The Parties' versions of the facts conflict. Plaintiff alleges that he filed grievances, but that Defendants destroyed them and threatened him if he filed grievances against them [ECF No. 36]. Defendants allege that Plaintiff did not file grievances regarding the instant allegations [ECF No.

34].

Taking Plaintiff's allegations as true, Plaintiff submits that he nevertheless did file grievances, and his own record submissions facially demonstrate that he did exhaust the administrative grievance process. Specifically, Plaintiff alleges in his submissions that on March 26, 2019 Defendant McGee threatened him that other inmates would attack him and "approximately two and a half weeks later" he was stabbed by fellow inmates. Assuming this occurred around April 12 or 13, 2019, Plaintiff had twenty days afterward to file an informal grievance. Plaintiff's alleges that he filed an informal grievance in which he specifically names Defendants on April 22, 2019, that he appealed the fact that officials did not respond ten days later on May 2, 2019 via formal grievance, and then submitted an appeal to the FDOC on May 22, 2019 when he again did not receive a response [ECF No. 36, pp. 10–13].

In sum, taking Plaintiff's factual assertions as true, as *Turner*'s first step requires, the record establishes that Plaintiff has demonstrated that he exhausted his administrative remedies before filing his Complaint. The Court now moves to step two of *Turner*.

**D. The Court's findings under step two of *Turner* show Plaintiff failed to exhaust administrative remedies.**

Under *Turner*, if dismissal is inappropriate after taking the Plaintiff's allegations is true, the court then makes "specific findings in order to resolve the disputed factual issues related to exhaustion." *McIlwain v. Burnside*, 830 F. App'x 606, 610 (11th Cir. 2020). A district court may resolve material questions of fact based on submitted papers only "in the absence of a timely request for an evidentiary hearing." *Bryant v. Rich*, 530 F.3d 1368, 1377 n.16 (11th Cir. 2008). Neither party has requested an evidentiary hearing on this matter so the Court will resolve material questions of fact on the papers. *C.f.*, *McIlwain*, 830 F. App'x 611 (finding *Turner* required the district court to hold an evidentiary hearing when [Plaintiff] requested an evidentiary hearing to

7

compare the tear marks on his receipt with those on the original grievance form so that he could rebut the defendants' allegation of forgery).

The question of fact here is whether the "copies" of grievances that Plaintiff submitted to the Court ever were actually filed by the Plaintiff, or put another way, whether the alleged grievances submitted by the Plaintiff were destroyed by the Department of Corrections.

As addressed, *supra*, Defendants have provided copies of the Plaintiff's grievances that are on record with FDOC as well as grievance logs. Defendants assert that "the Court can review Plaintiff's extensive record of having filed other grievances during the same time frame and can compare the examples of those grievances Plaintiff claims he filed to the examples of the grievances discussed in Defendants' Motion to Dismiss" [ECF No. 38, p. 3]. Defendants claim "the lack of evidence that the three purportedly filed grievances in Plaintiff's Exhibit A were received by the institution is particularly evident when comparing those purportedly filed grievances that were filed by Plaintiff and bear stamps that state 'Received' [ECF No. 34-7] or include a date stamp on the grievance form in the space marked 'Date Received'" [ECF No. 34-5], [ECF No. 34-6] (quotations in original).

The "copy" of the April 22, 2019 informal grievance submitted by the Plaintiff has "April 22, 2019" stamped in the upper left-hand corner; the same day it was supposedly submitted [ECF No. 36, p. 10]. It bears no other stamp or marking from the institution. If you compare this with the copy of the April 21, 2019 informal grievance that the Defendants provided, that grievance bears an "April 25, 2019" date stamp next to the "Date Received" line [ECF No. 34-5]. A grievance number is also handwritten at the top of the page [ECF No. 34-5]. The "copy" submitted by Plaintiff is therefore inconsistent with the grievance in the FDOC records submitted by

8

Defendants in three ways: 1) the stamp is in a different place, 2) there is no grievance number, and 3) there is no gap in time between the date submitted and the date received.

Plaintiff's "copy" of the formal grievance differs from the formal grievances submitted by Defendants more dramatically. The "copy" of the formal grievance allegedly submitted by Plaintiff on May 2, 2019 bears a date stamp "May 02, 2019" in the upper right corner [ECF No. 36, p. 11]. The formal grievance in the FDOC record bears a stamp that says "Martin Correctional Institution Grievance Office," and there is a date in the upper left corner with a grievance number handwritten on the top of the page [ECF No. 34-6, p. 2]. Similarly, the "copy" of the appeal to the Department of Corrections dated May 22, 2019 has a date stamp in the upper left-hand corner [ECF No. 36, p. 12]. It contains no other stamps or indications that it was received by the Department of Corrections or by the facility. As provided by Defendants, appeals to the Department of Corrections bear a stamp that reads "RECEIVED [date] Department of Corrections Inmate Grievance Appeals" [ECF No. 34-7, p. 2].

Plaintiff's "copies" only contain a single date stamp at the top of the page, but no grievance number written or facility stamp. Plaintiff does not explain why the "copies" he provided do not have the "Martin Correctional Institution Grievance Office" or the "Department of Corrections Inmate Grievance Appeals" stamps. Nor does he explain why the dates are in different places.

As the Defendants point out, Plaintiff also titles his response "Affidavit," but does not make any representations under penalty of perjury [ECF No 38, p. 1 n. 1].

The inconsistencies between the "copies" submitted by Plaintiff and what filed grievances actually look like supports a factual finding in favor of Defendants that the "copies" were in fact never filed. So too does the fact that the FDOC did record the Plaintiff's grievances related to other matters during this time period and failed to destroy those. Notably, it is in the FDOC record

that the Plaintiff filed a grievance about Defendant McGee on April 21, 2019—approximately a week after the alleged incident—but failed to make any mention of the threats or the stabbings. Plaintiff fails to explain why select grievances were destroyed, but the dozens of other grievances that were filed during this time period were not.

In resolving the factual disputes in favor of the Defendant, the Court finds Plaintiff failed to exhaust his administrative remedies. *Turner*, 541 F. 3d 1082. It is undisputed by Plaintiff that the grievances that are on file with FDOC do not make any mention of the allegations in the instant Complaint. Therefore, this case is dismissed for Plaintiff's failure to exhaust administrative remedies.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Motion to Dismiss [ECF No. 37] is **GRANTED**.

2. Plaintiff's Complaint [ECF No. 1] is **DISMISSED** for failure to exhaust administrative remedies.

3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 18th day of June 2021.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:  Avion Lawson #W38414
     Martin Correctional Institution / Inmate Mail/Parcels
     1150 Allapattah Road
     Indiantown, Florida 34956
     *PRO SE*

     Counsel of record

10